†BELLAIRE GOBLET CO. v. FINDLAY (CITY) ET AL.

1. STATUTES GOVERNING ARTIFICIAL GAS LIGHTING APPLY TO NATURAL GAS PLANTS.— GAS WORKS CONSTRUCTED UNDER SPECIAL STATUTE.

The natural gas plant owned and controlled by the city of Findlay, Hancock county, Ohio, is subject to and governed by sections 2478 to 2491 (inclusive) Revised Statutes. Section 2491a of the Revised Statutes, though general in its terms, does not apply to a city whose gas works were constructed under a special statute inconsistent therewith, and does not control or govern said plant.

2. PRICES CHARGED FOR GAS MUST BE UNIFORM.

The only power conferred, so far as the price of gas is concerned, under sec. 2489, Rev. Stat. is, that the city council, by ordinance, shall adopt such rules and regulations and the manner of using gas, as to the council shall appear just and equitable, subject to the limitation that the rules and regulations and the manner of using gas, shall be uniform, applying alike to all the inhabitants under similar conditions. That the board of gas trustees following the rules, regulations and manner of using gas

---

†This case is distinguished in Dalzell v. Findlay, *post* 214; followed in Foster v. Findlay *post* 224.

adopted by the city council, shall prescribe _by by-laws the price to be charged for gas, subject to the limitation that the price thus fixed shall be uniform to all the inhabitants under similar conditions.

3. SPECIAL CONTRACTS AS TO PRICE OF GAS ARE VOID.

Special contracts entered into by the city council or the board of gas trustees of a municipality which owns and controls gas works or a natural gas plant, in reference to the price of gas furnished, are unauthorized by law, and are void

4. GENERAL GRANT OF POWER IS LIMITED TO THE FIXED PRICE.

The power conferred by sec. 2489 Rev. Stat. to "manufacture and sell gas and coke" is limited to the price fixed by the by-laws adopted by the board of gas trustees.

5. PRICE FIXED IS PRESUMED REASONABLE UNTIL CONTRARY IS AVERRED AND PROVED.

The price fixed for gas by the proper board of a city owning a gas plant is presumably reasonable, until facts showing the contrary are alleged and proved.

6. CONTRACT WITH A COMPANY WHOSE OFFICER IS A MEMBER OF COUNCIL IS VOID.

Contracts entered into between a board of gas trustees of a municipality and an incorporated company, when a member of the board of gas trustees is at the same time an officer and personally interested in the incorporated company, are against public policy, and void, the statute making it penal being equivalent to a prohibition.

7. EQUITY WILL NOT INTERFERE AS TO PRICE OF GAS UNLESS THERE IS A DISCRIMINATION.

Equity will not interfere with the different boards of a municipality in reference to the price to be charged for gas, unless there has been a discrimination, and that discrimination compels the party to pay more than others similarly situated.

8. SOLVENCY OF CONSUMER, IN PROCEEDING TO ENJOINING CITY FROM TURNING OFF GAS, IS IMMATERIAL.

That a party is solvent and abundantly able to pay all just claims and liabilities, will not deprive the municipality of the right to turn off the gas, if the party refuses to pay what the municipality has a legal right to demand.

On Appeal from the Court of Common Pleas of Hancock county.

SENEY, J.

The petition alleges, in substance, the following facts:

That the plaintiff is a corporation duly organized under the laws of Ohio.

That the city of Findlay is a municipal corporation.

That the board of trustees of the gas works of said city comprises five members elected by the electors of said city, and organized with the powers, duties, and obligations defined by the ordinances of the city, and the laws of the state.

That about the year 1886 the city of Findlay, by its council, pursuant to the votes of the electors thereof, the ordinances of the city and the laws of Ohio, determined to establish, construct, maintain and operate a natural gas plant, and to furnish natural gas for said city and the inhabitants thereof for public and private use, and in pursuance thereof, said city purchased and laid gas mains and pipes, drilled gas wells, and established, and ever since has maintained and operated a natural gas plant, and has furnished gas to and for said city and the people thereof, for public and private use, and has elected gas trustees.

That having a large surplus of gas, the gas trustees, council, and people generally of said city, by acts, words and published statements and promises, invited manufacturers to invest and locate factories in said city, promising gas free, or at such reasonable prices as would enable them to successfully compete with manufactories elsewhere.

That on and prior to the month of April, 1888, a party of gentlemen styling themselves "The Wyoming Syndicate and The Howard Syndicate," were the owners of a large tract of land, and said syndicates offered and agreed with plaintiff that if plaintiff would erect a first-class factory for glassware, and employ a large number of hands, they would furnish gas to plaintiff for fuel, free of cost.

That plaintiff accepted said proposition, erected said factory, employing from two hundred and twenty-five to three hundred employes, and said syndicates on their parts furnished plaintiff with gas under said contract, until about May 9, 1889, when said factory was destroyed by fire.

That on May —, 1889, the said board of gas trustees, at the instance of leading citizens of Findlay, to induce plaintiff to rebuild its works at Findlay and maintain and operate them there, promised, offered and agreed to furnish natural gas for plaintiff's factory, so long as gas could be supplied, for and at the rate and price of four hundred dollars per year.

That plaintiff accepted said proposition ,and made and entered into a written contract with defendants, whereby in consideration of the rebuilding of said factory, defendants agreed to furnish gas to plaintiff during said time, at said agreed price. Upon the faith

of said contract, plaintiff rebuilt said factory and released said syndicates from their contract to furnish gas.

But that for the said contract and agreement plaintiff would not have rebuilt said plant, or operated said factory.

That from that time forward, and up to December 1, 1890, defendants did furnish gas to plaintiff, and plaintiff paid the price so fixed monthly.

That on November 28, 1890, in violation of said contract, defendants advanced the price of gas to plaintiff from $400 to $3,666 per year, and notified plaintiff that unless said advanced rate was paid by December 31, the gas would be, by defendants, cut off from plaintiff's said factory.

That said increased price is unjust, is in violation of said contract, that the same is exorbitant, and plaintiff can not pay the same and operate said factory profitably.

That plaintiff is solvent and abundantly able to pay all just claims and liabilities.

The defendants have a surplus supply of gas largely over and above the amount necessary for private consumption.

That if defendants are permitted to cut off the gas from said factory, they will sustain great and irremediable loss, harm, and damage, for which they have no adequate remedy at law; and their melting pots, furnaces, and appliances will at once break and be destroyed; that their employes must be discharged; and they, with all dependent upon them, be deprived of their means of support, and their business, sales and business relations be greatly impaired and injured, if not ruined.

The plaintiff therefore prays that the defendants be enjoined from cutting off said gas from said factory.

To this petition defendants interpose an extremely lengthy answer; many, very many of the averments are immaterial, and only such allegations as in our judgment are material do we here cite.

That the said gas trustees derive all their powers and duties from section 2491a, Rev. Stat., and also from a special act, entitled: "An act to authorize the village of Findlay to borrow money and issue its bonds therefor, for the purpose of sinking wells for natural gas, etc., etc.," and found in volume 83, 348, of the laws of Ohio.

That the rates of gas have been raised on all private consumers, and all others, including plaintiff.

That on May 21, 1889, the board of gas trustees fixed the price of gas to be furnished the plaintiff at $400 per year.

That one Mr. Gorby was one of the five gas trustees that so fixed the price to be paid by plaintiff, and at the same time he was a part owner of plaintiff's factory, and also one of the officers of the plaintiff's corporation.

That the revenues of said gas plant, by said alleged contract, and many others of a like kind, have been diverted and misappropriated, with the connivance and assent of plaintiff and its officers and agents.

That the said board of gas trustees had no power to make the contract alleged in the petition; that the same as therein set forth, and the resolutions as aforesaid, are without authority of the law, and against public policy, and are void.

That to perform said contract and similar contracts of other factories, it will take more than nine-tenths of the entire present gas supply to furnish them, and at their present pretended contract prices, such factories will pay for the use of such gas not more than one-tenth of the entire revenues derived from all the gas consumed by private consumers and factories from said plant, and it will cause the private consumers to pay the residue.

That the sum so charged to plaintiff, as set forth in the petition, of which plaintiff complains, is reasonable, and ought to be paid by it as its just proportion for the gas so used and consumed; that the said new rate is far below the actual value of the gas consumed by plaintiff, and is far less in proportion than the rates charged to and paid by private consumers.

That the plaintiff uses daily of said gas more than 1,920,000 cubic feet; that the same, if rated at the price charged to said city and to the private consumers, will amount to much more than the new rate so fixed.

To the answer filed in the case the plaintiff files a reply, the greater part of which consists of denials of the immaterial averments of the answer; the only material averments replied to we cite:

That it denies that plaintiff ever used, or uses 1,920,000 feet of gas daily, or one-half of that amount.

That the amount of gas consumed by said factories will not exceed one-third, instead of nine-tenths, as claimed by the defendants, of the total gas consumed.

That it denies that said contract, or said resolution, are without authority of law or against public policy

From these facts, alleged in the pleadings, are the only issues made that call for an application of the rules and principles of law that must govern the parties herein.

We shall first consider the averments of the petition, for if the plaintiff is entitled to the relief sought, it is by virtue of legal rules applied to the truth of these averments.

The acts, words, published statements, and promises of the gas trustees, council and people generally, to the effect that all factories that would locate in the city of Findlay should have gas free, or at such reasonable prices as would enable factories to successfully compete with manufactories elsewhere, amounts to nothing in law; for the simple reason that the respective authority placed in the different boards of a municipal corporation, whereby the corporation can be bound, and for which the corporation is liable, does not authorize said boards by acts, words, or published statements, to create a liability against a municipal corporation.

The contract pleaded, whereby The Wyoming Syndicate and The Howard Syndicate agreed to furnish plaintiff gas free, upon the consideration expressed in the contract, notwithstanding the city and the gas trustees in their answer aver that the gas trustees, in effect, assumed this contract, and then seek to avoid it, can have no effect in this case; for the reason that if the plaintiff under its pleading could not enforce it against the syndicates, it can not enforce it against the city.

The consideration for the furnishing of free gas by the syndicates was the establishing and maintaining the plaintiff's factory. This factory was destroyed by fire May 9, 1889; then the consideration failed; there was no factory to supply gas to; this contract was at an end. It may be that the rebuilding of the factory might renew this contract, keep it alive at the option of the plaintiff; however that may be, the plaintiff would have the undoubted right to terminate it if the syndicate did not insist upon its being enforced. This the plaintiff has done, for it avers at least twice in its petition, and reiterates it in its reply, "but that (for the subsequent contract with the gas trustees of date May, 1889) plaintiff would not have rebuilt said plant, or operated said factory."

"That plaintiff is solvent and abundantly able to pay all just claims and liabilities," will not deprive the city of the right to turn off the gas if the plaintiff refuses to pay what the city has a legal right to demand.

So that we have left in the petition but two grounds of complaint. First: That the defendants should be enjoined from turning off the gas, because the gas trustees entered into a contract in May, 1889, to furnish plaintiff gas at $400 per year so long as said gas could be supplied, and the advancing the price of gas is in violation of this agreement; and second, said increased price is unjust; that the same is exorbitant, and plaintiff can not pay the same and operate said factory profitably.

As to these remaining issues the defendants say:

That the defendants, the city and gas trustees, derive their authority from certain statutes, and by these statutes the board of gas trustees had no power to make this contract, and that the same is against public policy.

That by reason of Mr. Gorby being at the same time when this contract was entered into, a member of the board of gas trustees, and also an officer of plaintiff, the contract is void.

That the rates of gas have been raised on all private consumers, and all others, including plaintiff.

The questions thus made are in the nature of admitted facts, and do not call for proof, but only for an application of the law to these facts.

In the year 1886, the legislature, by a special act, authorized the then village of Findlay to purchase or maintain a natural gas plant for the purpose of supplying gas for fuel and light. In the year 1887, the legislature amended secs. 2478 and 2491 Rev. Stat. so that these sections that, prior to this amendment only applied to artificial gas com-

panies, by the amendment are made to include natural gas companies; these sections are found in the chapter of the revised statute relating to gas companies. In the same chapter, sec. 2486 provides and grants the power to the council of any city or village to erect works or purchase any gas works at the expense of the corporation. This sec. 2486 remains the same in the chapter on gas companies as it was prior to the amendment of secs. 2478 and 2491, and by so remaining unchanged, it expresses a legislative intent that the gas works mentioned in sec. 2486 that council have the power to erect or purchase, which before the amendment might only apply to artificial gas works, after the amendment include natural gas plants; so that after the amendment, secs. 2486 to 2491 (inclusive) Rev. Stat., apply to natural gas plants as well as to artificial gas works. Under the provisions of these sections the council of the then village of Findlay purchased or erected the natural gas plant that it now owns, and provided for a board of gas trustees consisting of five members, the number of members of said board remaining to the present time the same as when first created.

In the year 1889 the legislature enacted sec. 2491a, which provides that when a municipality has been or shall be authorized to purchase or construct any natural gas works for supplying fuel, etc., the provisions of the chapter of the revised statutes on the subject of water works shall apply in all cases not otherwise provided for by statute. This section can have no application to the city of Findlay, for it was otherwise provided for by a statute, as we have seen, and by which the council of Findlay was governed in the creation of its board of gas trustees. To hold otherwise, then Findlay's board of gas trustees would be legislated out of office by section 2491a, as the sections of the statute on the subject of water works only authorize council to create a board of three trustees; and this could not have been the intention of the legislature unless clearly so expressed.

So we hold that sec. 2491a does not apply to the natural gas plant of Findlay, but that the latter is governed by secs. 2486 to 2491 (inclusive), Rev. Stat.

The contract pleaded, that the plaintiffs entered into with the gas trustees, is nothing more or less than an attempt to fix the price of gas by a special contract. Can this be done? This calls for a construction of sec. 2489, Rev. Stat., for from this section alone is derived the power to fix the price of gas.

Sec. 2486 Rev. Stat. provides: "The council of any city or village shall have power whenever it may be deemed expedient and for the public good, to erect or purchase gas works at the expense of the corporation."

This necessarily suggests the question, how is this expense to be met? For it must be borne in mind, when the works are first started there can be no revenues wherewith to pay, and the anticipated revenues may not be sufficient to pay the cost of construction or purchase, so that the only mode which the statute provides to meet this expense, is by taxation.

Article XII, sec. 2, of the constitution of the state, provides:

"Laws shall be passed, taxing by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise; and also all real and personal property, according to its true value in money, etc., etc"

Laws have been enacted under this provision of the constitution, and although different modes to accomplish this purpose have been provided, they are all based upon a uniform rule. The same mode applies to each individual, and the same mode applies to each manufacturer; in other words, the valuation of each individual's property subject to taxation, is governed by the same rule, and the manner of arriving at the valuation of the property of a manufactory subject to taxation, is each governed by the same rule; so that the expense in constructing or purchasing gas works by a municipality, is borne by each taxpayer according to a uniform rule, and not by a rule that casts a greater burden on one than another in similar circumstances, as was said by our supreme court in Bank v. Toledo, 1 O. S., 623:

"The property of every person, however absolute the tenure by which it is held, must be liable to bear an equal and just proportion of the public burden by way of taxation in return for the protection and advantages afforded by the government, and that proportion of taxation must be determined by the legislative power which extends to all persons and property within the state."

Vol. III C. C. 14

Hence, by analogy, the benefits to be derived on account of the burden, should be shared equally and by a uniform rule. To use the language of Dickman, J., in the case of State ex rel. v. Toledo, 48 O. S., 112, 138:

"It is sufficient, if every inhabitant who is so situated that he can use it (gas), has the same right to use it as the other inhabitants;" and again, the same judge says, on page 140: "But every citizen, as a member of the community, has an interest in their construction, management and maintenance (gas works). The advantage resulting from them is tendered on equal terms to every inhabitant of the city." And, again, on page 135, the judge says: "The expense of the undertaking (gas works), is not to be incurred in behalf of a favored class of citizens, or to foster certain branches of industry, but for the benefit of all the inhabitants of the city."

Again, Art. VIII, sec. 6, of the constitution of the state, provides:

"The general assembly shall never authorize any county, city, town or township, by vote of its citizens, or otherwise, to become a stockholder in any joint stock company, corporation or association whatever, or to raise money for, or to loan its credit to or in aid of any such company, corporation or association."

This sec. of Art. VIII, of the constitution, received a construction from our supreme court in Walker v. Cincinnati, 21 O. S., 54, wherein Scott, J., in delivering the opinion of the court, says:

"It forbids the union of public and private capital or credit in any enterprise whatever; they (meaning cities, towns, etc., etc.,) may neither become stockholders, nor furnish money or credit for the benefit of the parties interested therein. * * * It is but applying an axiom to say that what the general assembly is thus prohibited from doing directly, it has no power to do indirectly."

So that if the council or board of gas trustees, under sec. 2489, Rev. Stat., have the power to enter into special contracts for furnishing gas, they could do indirectly what the general assembly, under this article of the constitution, is directly prohibited from doing—conferring such power.

To illustrate: The gas in the wells belonging to the city of Findlay, so far as the value thereof is concerned, is as much the property of the inhabitants of the city, and is to be disposed of for the benefit of the city, as the money in the city treasury. The money in the city treasury can not be furnished any inhabitant or factory in furtherance of the private enterprise of the inhabitant or factory. Why, then, can the gas belonging to the city, which represents money, be furnished for the same purpose? If this sec. 2489 can be construed to authorize the council or board of gas trustees to enter into special contracts for furnishing gas, the power would be unlimited to so contract. To illustrate:

A contract could be entered into whereby the city could furnish gas worth a thousand dollars for a mere nominal sum. This would indirectly be furnishing the money of the city to the contracting party to the extent of the excess of the value of the gas over the nominal sum, in furtherance of the person's private interest, which is directly prohibited by the article of the constitution cited. The loss thus sustained by the city would have to be supplied by money raised by taxation, thus indirectly raising money by taxation to aid a private enterprise.

The words "manufacture and sell gas and coke," contained in sec. 2489, must be construed with the other part of the section, which provides that the board of gas trustees "may prescribe by by-laws the price of gas and coke, under such rules and regulations as by ordinance the council may prescribe, and the manner of using gas," thus limiting the power of sale to the price fixed by the by-laws, etc., etc. To give them any other construction would authorize the making of a special contract, which we have seen would be in violation of the constitution.

So we hold that under sec. 2489, the only power conferred, so far as the price of gas is concerned, is, that the council shall adopt such rules, and so regulate the manner of using gas by ordinance, as to the council shall appear to the best interest of all, subject to the limitation that the rules and regulations, and the

manner of using gas shall be uniform, applying alike to all the inhabitants under similar conditions. Following these rules, regulations and manner of using gas thus adopted, the board of gas trustees shall prescribe the price of gas by by-laws, subject to the limitation that the price shall be uniform to all inhabitants under similar conditions.

With this holding it follows, that the contract pleaded in the petition is void for want of power or authority in the board of gas trustees to enter into it.

The next question presented is: What is the effect of the fact that Mr. Gorby, at the time the contract was entered into, was a member of the board of gas trustees, and also an officer of plaintiff?

Sec. 6969, Rev. Stat. in effect, provides that an officer elected or appointed to any office of trust or profit, shall not be interested in any contract for the purchase of any property under severe penalty.

Sec. 6976, Rev. Stat., provides that an officer or member of the council of any municipal corporation, who is interested directly or indirectly in the profits of any contract, etc., shall be fined or imprisoned, or both.

So that this dual relation existing as to Mr. Gorby, prevented him from acting upon this so-called contract as a member of the board of gas trustees. The record shows he did not act. Yet the board consisted of five members; each one of the members was entitled to be heard, each one of the members was entitled to act, but on account of the personal interest of Mr. Gorby, he could not act, so that in fact five members constituted the board, and in law five members was a legal board, but through the personal interest of Mr. Gorby the board, for the purpose of acting upon this contract, was reduced to four, which was not a legal board, and hence had no power to act.

It is said by Thurman, J., in Bloom v. Richards, 2 O. S., 395: "That the infliction of a penalty for the commission of an act is equivalent to an express prohibition of such act, seems to be settled by a great weight of authority."

Also, in Doll v. State, 45 O. S., 449, Williams, J., says:

"To permit those holding offices of trust or profit to become interested in contracts for the purchase of the property for the use of the state, county or municipality, of which they are officers, might encourage favoritism and fraudulent combinations and practices not easily detected, and thus make such officers charged with the duty of protecting those whose interests are confided to them, instruments of harm. The surest means of preventing this was to prohibit all such contracts."

One cause of complaint still remains, viz.: That said increased price is unjust; that the same is exorbitant, and plaintiff cannot pay the same and operate said factory profitably.

To which defendants answer, that the rates of gas have been raised on all private consumers, and all others, including plaintiff.

In what way or manner the rates are unjust or exorbitant we are not advised. These are simple conclusions of the pleader. If the prices thus advanced are based upon a uniform rule, and are a fair and reasonable proportion of the rate established for others, and no greater or higher than for others similarly situated, dependent upon similar conditions, they are such rates in our judgment as the law authorizes, and of which the plaintiff has no just or legal cause of complaint. That they are such, in the absence of a showing to the contrary, we are bound to presume.

It was held in Wagoner v. Loomis, 37 O. S., 571, that:

"Inequalities in the valuation, made under a valid law, of property for taxation, do not constitute grounds for enjoining the tax in the absence of fraudulent discriminations by the agents and officers charged by the law with the duty of making such valuation. * * * Even in such case, equity will not relieve a taxpayer whose property is not assessed in a greater amount than would have been imposed upon it in case all the taxable property of the state had, in fact, been assessed by a uniform rule, and according to its true value in money."

Applying this principle to the case before us, equity will not enjoin the rates established by defendant boards unless there has been a discrimination, and that

discrimination causes the plaintiff to pay more than others similarly situated. Suffice it to say no such cause of complaint is made in the pleadings.

For these reasons the injunction will be vacated, the petition dismissed, the plaintiff to pay all cost; execution awarded and cause remanded for execution.

Cleveland Target Co. v. Findlay (city).

Lippincott Co. v. Findlay (city).

The decision just announced determines these cases in favor of the defendants.

The injunctions will be vacated, petitions dismissed, plaintiffs to pay all cost, execution awarded, and causes remanded for execution.

Beer and Moore, JJ., concur.

Burket & Burket and J. A. Bope, for plaintiff.

W. F. Duncan, city solicitor, and Geo. F. Pendleton, for defendants.